# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

EL CENTRO REGIONAL MEDICAL CENTER,

Plaintiff,

vs.

MICHAEL LEAVITT, SECRETARY OF THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,

Defendant.

CASE NO. 07cv1182 WQH (PCL)

ORDER

HAYES, Judge:

The matters before the Court are (1) the motion for summary judgment (Doc. # 16) filed by Plaintiff El Centro Regional Medical Center, and (2) the cross motion for summary judgment (Doc. # 17) filed by Defendant Michael Leavitt.

**BACKGROUND**

Plaintiff El Centro Regional Medical Center provides hospital care to Medicare beneficiaries pursuant to a Medicare provider participation agreement. In 1999 and 2000, Plaintiff claimed reimbursement for certain unpaid deductible and coinsurance obligations of Medicare beneficiaries. In a final administrative review, the Administrator of the Center of Medicare and Medicaid Services, acting on behalf of the Secretary of the Department Health and Human Services, disallowed reimbursement of Plaintiff's Medicare bad debts, finding that Plaintiff had not made "reasonable collection efforts" as required by Medicare regulation. Plaintiff filed this appeal, contending that the

final decision of the Secretary is arbitrary and capricious, contrary to Medicare law, and unsupported by substantial evidence.

*Statutory and Regulatory Background*

The Medicare Act establishes a comprehensive federal health insurance program for the elderly, disabled, and other eligible individuals. 42 U.S.C. § 1395 *et seq*. Medicare is administered by the Secretary of Department of Health and Human Services (HHS), who has delegated this responsibility to the Administrator of the Center for Medicare and Medicaid Services (CMS). Medicare providers participate in Medicare by entering into a participation agreement with the Secretary and CMS. Medicare reimburses provider hospitals for the reasonable cost of services provided to Medicare beneficiaries. 42 U.S.C. § 1395x(v)(1)(A). Reasonable costs are those "actually incurred, excluding therefrom part of the incurred cost found to be unnecessary in the efficient delivery of health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included." 42 U.S.C. § 1395x(v)(1)(A). Title 42 of the Code of Federal Regulations and the CMS Provider Reimbursement Manual provide guidance on reimbursement of reasonable costs to Medicare providers.

The Medicare Act prohibits cross-subsidization of reasonable costs, directing that the regulations ensure necessary costs of efficiently delivering covered services to Medicare beneficiaries "will not be borne by individuals not so covered." 42 U.S.C. 1395x(v)(1)(A). Consistent with this mandate, Medicare reimburses providers for unpaid deductible and coinsurance obligations of Medicare beneficiaries:

> Under Medicare, costs of covered services furnished beneficiaries are not to be borne by individuals not covered by the Medicare program, and conversely, costs of services provided for other than beneficiaries are not to be borne by the Medicare program. Uncollected revenue related to services furnished to beneficiaries of the program generally means the provider has not recovered the cost of services covered by that revenue. The failure of beneficiaries to pay the deductible and coinsurance amounts could result in the related costs of covered services being borne by other than Medicare beneficiaries. To assure that such covered service costs are not borne by others, the costs attributable to the deductible and coinsurance amounts that remain unpaid are added to the Medicare share of allowable costs.

42 C.F.R. § 413.89(d). *See Community Hospital of Monterey Peninsula v. Thompson*, 323 F.3d 782, 786 (9th Cir. 2003) ("[b]ecause the coinsurance and deductible amounts are sometimes uncollectible from the enrollee, Medicare reimburses the health care provider for this 'bad debt' to prevent a cost

shift from the Medicare recipient to individuals not covered by Medicare.”).

Medicare bad debts are defined as “amounts considered to be uncollectible from accounts and notes receivable that were created or acquired in providing services. ‘Accounts receivable’ and ‘notes receivable’ are designations for claims arising from the furnishing of services, and are collectible in money in the relatively near future.” 42 C.F.R. § 413.89(b). A provider may receive reimbursement for Medicare bad debt if it meets the regulatory criteria of 42 C.F.R. § 413.89(e):

> Criteria for allowable bad debt. A bad debt must meet the following criteria to be allowable:
> (1) The debt must be related to covered services and derived from deductible and coinsurance amounts.
> (2) The provider must be able to establish that reasonable collection efforts were made.
> (3) The debt was actually uncollectible when claimed as worthless.
> (4) Sound business judgment established that there was no likelihood of recovery at any time in the future.

42 C.F.R. § 413.89(e).

The Center for Medicare and Medicaid Services publishes the Provider Reimbursement Manual (PRM), which contains interpretive guidelines and policies to implement the regulations under the Medicare Act. Section 310 of the PRM provides a more detailed explanation of reasonable debt collection efforts and documentation methods:

> To be considered a reasonable collection effort, a provider’s effort to collect Medicare deductible and coinsurance amounts must be similar to the effort the provider puts forth to collect comparable amounts from non-Medicare patients. It must involve the issuance of a bill on or shortly after discharge or death of the beneficiary to the party responsible for the patient's personal financial obligations. It also includes other actions such as subsequent billings, collection letters and telephone calls or personal contacts with this party which constitute a genuine, rather than a token, collection effort. The provider’s collection effort may include using or threatening to use court action to obtain payment.

PRM § 310. Section 310.A of the PRM provides further guidance regarding a provider’s use of a collections agency:

> A provider’s collection effort may include the use of a collection agency in addition to or in lieu of subsequent billings, follow-up letters, telephone and personal contacts. Where a collection agency is used, Medicare expects the provider to refer all uncollected patient charges of like amount to the agency without regard to class of patient. The “like amount” requirement may include uncollected charges above a specified minimum amount. Therefore, if a provider refers to a collection agency its uncollected non-Medicare patient charges which in amount are comparable to the individual Medicare deductible and coinsurance amounts due the provider from its Medicare patient, Medicare requires the provider to also refer its uncollected Medicare deductible and coinsurance amounts to the collection agency. Where a collection agency is used, the agency’s practices may include using or threatening to use court

action to obtain payment.

PRM § 310.A. In addition, the PRM provides a presumption of uncollectability at §310.2: "[i]f after reasonable and customary attempts to collect a bill, the debt remains unpaid more than 120 days from the date the first bill is mailed to the beneficiary, the debt may be deemed uncollectible." PRM § 310.2.

At the close of each fiscal year, the provider prepares a report showing its costs and the percentage of those costs allocated to Medicare services. 42 CFR § 405.1801(b). The provider may claim Medicare bad debts in the cost report during "the accounting period in which the accounts are deemed to be worthless." 42 C.F.R. § 413.89(f), PRM § 314. The cost report serves as the basis for the provider's total allowable Medicare reimbursement. §§ 413.20(b), 413.24(f ). The provider files the report with a fiscal intermediary under contract with the Secretary. 42 U.S.C. § 1395h. The intermediary audits the cost report and issues a written "notice of program reimbursement" which determines the total amount reimbursable payable to the provider for Medicare services during the reporting period. 42 CFR § 405.1803.

A provider that is dissatisfied with the intermediary's determination of reimbursement may appeal with the Provider Reimbursement Review Board (the Board). 42 U.S.C. § 1395oo(f). The Board has "the power to affirm, modify, or reverse a determination of an intermediary with respect to a cost report and to make any other modifications on matters covered by such cost report (including modifications adverse to the provider or other parties) even though such matters were not considered in the intermediary's determination." 42 C.F.R. § 405.1869. Within 60 days of the Board's decision, the CMS Administrator, acting on behalf of the Secretary, may make a discretionary final administrative review. 42 U.S.C. § 1395oo(f); 42 C.F.R. § 405.1875(a)(1). The Administrator "will affirm, reverse, modify or remand the case" and may "rely on prior decisions of the Board, the Administrator and the courts, and other applicable law, whether or not cited by the parties and CMS." 42 C.F.R. § 405.1875(g)(1), (4). The provider may seek judicial review of any reversal, affirmation, or modification of the decision by the Administrator, by filing a civil action in United States District Court. 42 U.S.C. § 1395oo(f); 42 C.F.R. § 405.1877.

*Factual and Procedural Background*

Plaintiff El Centro Regional Medical Center is a short-term, acute care hospital and provider of Medicare services. (AR 36). At the close of its cost reporting periods ending June 30, 1999 and June 30, 2000, Plaintiff claimed reimbursement for bad debts attributable to uncollected deductibles and coinsurance of Medicare beneficiaries. (AR 36-37). The Intermediary reviewed the Plaintiff's cost reports and denied a total of $275,691 of the Plaintiff's bad debt claims. (AR 37).

The Intermediary reviewed a sample of Medicare regular bad debt accounts and non-Medicare bad debts. (AR 535). From the sample, the Intermediary found that both the provider's and the outside collection agency's collection efforts for Medicare accounts were less in a number of ways compared to non-Medicare accounts for similar amounts. (AR 531). The sample showed that skip tracing, legal action, interest expense and liens were done for the non-Medicare accounts only (AR 531, 565-572); that there were more telephone contact attempts to non-Medicare patients than to Medicare patients to collect bad debts (AR 531, 532); that Medicare accounts were usually worked an average of 102 days at the collection agency and then returned to the hospital as non-collectible while non-Medicare accounts were still being pursued by the collection agency(AR 532, tbl 1); and that letters sent to the Medicare accounts used different language and were stronger in tone (AR 532, 560-562). The Intermediary also found that Plaintiff provided collection agencies with a written collection procedure that treated Medicare and non-Medicare accounts differently. (AR 533). The collection agency procedure lists five actions required for all collection accounts. (AR 533, 579). After step five, the procedure states:

> **For Medicare accounts only:**
>
> 6. If phone or mail contact with the debtor is not established within the first 30 days and a satisfactory payment plan is not established with the debtor, the account will again be reviewed by the account supervisor. If the account appears to be uncollectible, the account is returned to the client [Plaintiff].
> 7. If the debtor fails to meet the payment arrangement plan as outlined in number 6 above, and if thirty days have transpired since the date of a promised payment, the account will again be reviewed by the account supervisor. If the account is deemed uncollectible, it will be returned to the client.

(AR 533-34, 579) (emphasis in original). The Intermediary concluded that "the provider's collection efforts do not constitute reasonable collection efforts as shown in our analysis and do not meet the criteria for allowable bad debts. . . The Provider's internal (hospital) and external (collection agency)

collection efforts were not similar for Medicare and non-Medicare patients." (AR 535).

The Board reversed the Intermediary's decision, holding that the Intermediary improperly disallowed Plaintiff's regular Medicare bad debts. (AR 34-40). The Board held that PRM § 310 does not apply to an outside collection agency's efforts:

> In the instant case, the Provider met this requirement by treating all patient accounts receivable of like amounts the same; such that when in-house efforts failed to collect on a patient account it was reviewed and forwarded to the outside collection agency when deemed appropriate. Contrary to the Intermediary's contention that collection efforts must be similar to the very end and in all phases of the collection process, the Board finds nothing in HCFA Pub. 15-1 §310.A that attempts to dictate to collection professionals how they must conduct their business. Furthermore, the Board finds that the only requirement mandated by this manual section is that when a provider uses a collection agency, it must refer all like amounts of Medicare and non-Medicare receivables for outside collection, which the Provider, in this case, did. Clearly, the manual provision is a program guideline that is applicable to Medicare providers, and it cannot be applied to third party/non-provider operations such as contracted collection agencies.

(AR 38-39). The Board concluded that the Plaintiff had "established that reasonable collection efforts were made and that the debts were actually uncollectible when claimed as worthless" and that Plaintiff's bad debt claims were reimbursable having satisfied the requirements of 42 C.F.R. § 413.89(e). (AR 39-40).

Upon review by the Administrator, the Board's decision was reversed. (AR 2-11). In the final Decision of the Administrator issued on February 23, 2007, the Administrator found that Medicare could not reimburse the bad debts claimed by Plaintiff because Plaintiff had not established through appropriate documentation that "the accounts were actually uncollectible when claimed as worthless or that sound business judgment established that there was no likelihood of recovery in the future." (AR 7-8). The Administrator stated that there was no evidence in the record showing that Plaintiff had engaged in similar, reasonable collection efforts for both Medicare and non-Medicare bad debts. (AR 9). After a review of the record and the applicable law and policy, the Administrator concluded that the "bad debts were properly disallowed under 42 C.F.R. §412.89(e)(2) through (4) and section 310 of the Manual." (AR 10).

On June 29, 2007, Plaintiff filed a complaint seeking judicial review of the Administrator's decision against Michael Leavitt, Secretary of Health and Human Services. (Doc. # 1). On April 7, 2008, Plaintiff filed a motion for summary judgment. (Doc. # 16). On May 5, 2008, Defendant filed

a cross motion for summary judgment. (Doc. # 17).

**STANDARD OF REVIEW**

The Administrator's reversal of the Board Decision constitutes a final administrative decision by the Secretary, reviewable by this Court under 42 USC § 1395oo(f)(1). The Court reviews the Secretary's decision pursuant to the provisions of the Administrative Procedure Act (APA). 5 USC § 551 et seq. The APA, which is incorporated by 42 USC § 1395oo(f)(1), directs a reviewing court to "hold unlawful and set aside" agency action that is arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence on the record taken as a whole." 5 U.S.C. § 706(2); *Villa View Community Hospital, Inc. v. Heckler*, 720 F.2d 1086, 1090 (9th Cir. 1982). *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994). Under the arbitrary and capricious standard, "a reviewing court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment . . . Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one." *Bowen Transportation v. Arkansas-Best Freight Systems*, 419 U.S. 281, 285-86 (1974).

Under the substantial evidence standard, "a court reviewing an agency's adjudicative action should accept the agency's factual findings if those findings are supported by substantial evidence on the record as a whole." *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Winans v. Bowen*, 853 F.2d 643, 645 (9th Cir. 1987). "[A]gencies charged with applying a statute necessarily make all sorts of interpretive choices, and while not all of those choices bind judges to follow them, they certainly may influence courts facing questions the agencies have already answered." *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001). Courts must give substantial deference to the Secretary's adjudicative interpretations of Medicare reimbursement regulations and policy. *Robert F. Kennedy Med. Ctr. v. Leavitt*, 526 F.3d 557, 561 (9th Cir. 2008). "This broad deference is especially warranted because Medicare regulations are complex and highly technical and determinations in this area necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns." *Id.*

**DISCUSSION**

Plaintiff contends that the Secretary's determination that Plaintiff failed to satisfy regulatory requirements for reimbursement of the bad debts at issue is arbitrary and capricious, runs counter to the evidence in the record, and is clearly erroneous. Plaintiff asserts that the evidence in the record shows that Plaintiff's in house collection efforts were substantially similar for its Medicare and non-Medicare bad debts, and that its Medicare bad debts were uncollectible when claimed as worthless. Plaintiff asserts that the Secretary's requirement that non-Medicare bad debts must be returned from a collection agency in order for the provider to obtain reimbursement for its Medicare bad debts is contrary to the law, regulations, and Manual provisions that govern Medicare reimbursement. Plaintiff further asserts that if the Secretary's intent is that the adjudication in this case be considered part of an ongoing policy that Medicare bad debts can never be recovered when comparable non-Medicare bad debts remain at an outside collection agency, the decision is invalid as a violation of the notice and comment requirements of the Administrative Procedure Act and the Medicare program.

Defendant contends that the decision of the Administrator, which constitutes a final decision of the Secretary, to disallow Medicare reimbursement for the bad debts incurred by Plaintiff for failing to meet 42 C.F.R. § 413.89(e)(2)-(4), is consistent with the governing Medicare regulations and is supported by substantial evidence. Defendant contends that Plaintiff's efforts to recover amounts owed by Medicare patients were "significantly less vigorous than its efforts to collect comparable non-Medicare debts," thus precluding the Secretary from finding that reasonable efforts were made to collect the bad debts. (Doc. # 17 at 2). Defendant asserts that the Secretary's determination that similar collection efforts must be applied throughout the entire collection process is a reasonable interpretation of the Medicare regulations and is entitled to deference.

The Medicare Act grants the Secretary broad discretion to determine which "reasonable costs" may be reimbursed to Medicare providers, 42 U.S.C. § 1395x(v)(1)(A). Pursuant to this statutory authority, the Secretary has promulgated various regulations regarding bad debt reimbursement and the documentation required to support reimbursement claims. 42 C.F.R. § 413.89(e) provides that bad debts may be reimbursed as reasonable costs only if four criteria are met, including the three criteria

at issue in this case: "the provider must be able to establish that reasonable collection efforts were made;" "the debt was actually uncollectible when claimed as worthless;" and "sound business judgment established that there was no likelihood of recovery at any time in the future." 42 C.F.R. § 413.89(e)(2)-(4).

The final decision of the Administrator applied the relevant provisions of the Medicare Act, the Secretary's regulations governing determination of reasonable costs for reimbursement and bad debts, and the relevant portions of the Provider Reimbursement Manual. (AR 5-7). The Administrator explained that the 120 day "presumption of uncollectability" provided at PRM § 310.2 is discretionary rather than mandatary, and "only applies where a provider has otherwise demonstrated through appropriate documentation that it engaged in similar, reasonable collection efforts for all accounts, both Medicare and Non-Medicare." (AR 8-9). The Administrator found that the administrative record did not support Plaintiff's contention that pursuing Medicare accounts past 120-days was not feasible, stating:

> Medicare anticipates a provider to pursue Medicare accounts and non-Medicare account of comparable amounts similarly, including collection efforts by an outside collection agency. Thus, the Administrator finds it reasonable to expect a provider to demonstrate that it has completed its collection effort for both Medicare and non-Medicare comparable accounts, including outside collection, before claiming Medicare debts as worthless. . . Further, the Administrator finds that the requirement set forth in the PRM at §§ 310 et seq., which consistently interprets the regulations at 42 C.F.R. §413.80(e)(1)-(4), mandates that when a collection agency is used, a provider's effort to collect the deductible and coinsurance amounts must be similar to the effort put forth to collect comparable amounts from non-Medicare patients throughout the entire collection process, both at the time prior to when the accounts are referred to the outside collection agency and while at the collection agency, and when returned for "write-off."

(AR 9-10).

The interpretive guidance provided in Section 310 of the Provider Reimbursement Manual specifically states that in order "to be considered a reasonable collection effort, a provider's effort to collect Medicare deductible and coinsurance amounts *must be similar to the effort* the provider puts forth to collect comparable amounts from non-Medicare patients." PRM § 310. The Administrator determined a provider is required "to demonstrate that it has completed collection efforts for both Medicare and non-Medicare comparable accounts, including outside collection, before claiming Medicare debts as worthless." (AR 9). "The well reasoned views of the agencies implementing a

statute constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance, and considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Mead*, 533 U.S. 218, 228. The Court concludes that it was neither arbitrary and capricious nor contrary to Medicare law and regulations for the Administrator to interpret PRM § 310 as being applicable to both in house and outside collection efforts. The Court further concludes that the Administrator's reasonable interpretation of 42 C.F.R. 413.89(e) and PRM § 310, as applied to the facts in this case, does not create a new policy subject to the notice and comment rulemaking procedures required by the Administrate Procedure Act.

The Administrator found in the record that "the Provider engaged in in-house collection efforts for both its Medicare and non-Medicare charges for approximately 90 days and then accounts of like amounts were transferred to an outside collection agency." (AR 8). The Administrator also found that collection efforts by the collection agency were reviewed after 30-60 days, at which point:

> . . . only the Medicare accounts were returned, as uncollectible. The Provider then wrote-off the Medicare accounts and claimed them as Medicare bad debts. The Provider acknowledged that non-Medicare accounts were retained by the collection agency, but claimed that while at the collection agency the accounts were treated the same, thus, it met the regulatory requirement to claim the debts at issue as uncollectible. However, despite this claim, the record shows that the collection agency retained non-Medicare accounts and continued collection procedures, including such procedures as legal action and skip tracing.

(AR 8). The Administrator noted that "the record shows that the Provider's collection letters differed between Medicare and non-Medicare accounts. The non-Medicare collection letters were stronger in tone and assessed greater penalty for non-payment." (AR 8).

The Administrator applied the relevant Medicare rules and laws to the facts in the record. The Administrator cited to specific evidence from the record showing Plaintiff's disparate treatment of Medicare and non-Medicare debt collection efforts. (AR 8-9) ("the record shows that the collection agency retained non-Medicare accounts and continued collection procedures, including such procedures as legal action and skip tracing . . . the record shows that the Provider's collection letters differed between Medicare and non-Medicare accounts. . . there is nothing in the record to show that engaging in similar collection efforts for Medicare accounts as the Provider has elected to pursue for non-Medicare accounts would not result in similar recovery."). The Court declines to re-weigh the evidence and concludes that the Administrator's conclusions were reasonable and supported by the

substantial evidence in the record as a whole.

**CONCLUSION**

IT IS HEREBY ORDERED that the motion for summary judgment (Doc. # 16) filed by Plaintiff is DENIED. The cross motion for summary judgment (Doc. # 17) filed by Defendant is GRANTED. The Clerk of the Court shall enter judgment in favor of Defendant and against Plaintiff.

DATED: November 24, 2008

William Q. Hayes

**WILLIAM Q. HAYES**
United States District Judge